UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION


UNITED STATES OF AMERICA      :     DOCKET NO. 4:13CR281
                              :
VS.                        :     SHERMAN, TEXAS
                              :     OCTOBER 31, 2017
LUIS MANUEL SORIA        :     9:30 A.M.


SENTENCING HEARING
BEFORE THE HONORABLE AMOS L. MAZZANT, III,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:        MR. ERNEST GONZALEZ
                          U.S. ATTORNEY'S OFFICE
                          101 E. PARK, SUITE 500
                          PLANO, TEXAS  75074

FOR THE DEFENDANT:         MR. JOHN HUNTER SMITH
                          NALL PELLEY & WYNNE
                          707 W. WASHINGTON
                          SHERMAN, TEXAS  75091

COURT REPORTER:           MS. JAN MASON
                          OFFICIAL REPORTER
                          U.S. DISTRICT COURTHOUSE
                          101 E. PECAN
                          SHERMAN, TEXAS  75090

PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

THE COURT: Good morning. Please be seated.

Our first case this morning is 4:13CR281, United States of America versus Luis Manuel Soria. And for the Government?

MR. GONZALEZ: Your Honor, Ernest Gonzalez for the Government. The Government is ready to proceed.

THE COURT: And for the Defendant?

MR. SMITH: John Hunter Smith for Mr. Soria, and we're ready to proceed.

THE COURT: Okay. So, Mr. Soria, you're here for your sentencing pursuant to your final Presentence Report that has been updated, that was dated October 11th, 2017. Have you had a chance to review the final Presentence Report, sir?

MR. LUIS MANUEL SORIA: Yes.

THE COURT: Make sure you speak into the microphone.

MR. LUIS MANUEL SORIA: Yes.

THE COURT: Have you had a chance to discuss it with your counsel?

MR. LUIS MANUEL SORIA: Yes.

THE COURT: And do you understand it?

MR. LUIS MANUEL SORIA: Yes.

THE COURT: And do you believe the report adequately covers your background?

MR. LUIS MANUEL SORIA: Yes.

THE COURT: And are you satisfied with the accuracy

of the report?

MR. LUIS MANUEL SORIA: Well --

THE COURT: I mean, I know you don't like the result that's recommended, but in terms of factually.

MR. LUIS MANUEL SORIA: Yes.

THE COURT: Okay. And then, Mr. Smith, have you had a chance to review the final Presentence Report with your client and do you believe he understands it?

MR. SMITH: I do, Your Honor.

THE COURT: And do you have any comments, additions or corrections to the report?

MR. SMITH: Not to this report. Back in 2015 I did file two objections to the previous report.

THE COURT: Okay. And do those objections still need to be taken up for this report?

MR. SMITH: For purposes of the record, yes, Your Honor.

THE COURT: Okay. Very good. Let's go ahead and discuss your objection number one.

MR. SMITH: Objection number one in the prior report was to paragraph 19 and in the final Presentencing Report it's paragraph 20 dealing with the importation of methamphetamines from Mexico.

Counsel understands the current status of the case law within the Fifth Circuit, but for purposes of providing

effective assistance of counsel, I am -- I filed an objection on this because it is our position that Mr. Soria did not have the requisite knowledge and it wasn't reasonably foreseeable that he knew that the methamphetamine came from Mexico.

Thank you.

THE COURT: But didn't his factual statement include a statement that it was imported from Mexico?

MR. SMITH: It did, Your Honor, and for purposes of providing effective assistance of counsel -- we understand, but I'm filing this pursuant to the request of the client.

THE COURT: I understand. Mr. Gonzalez, does the Government have anything to respond to this?

MR. GONZALEZ: Just briefly, Your Honor. As the Court noted, it does state in the factual basis that he signed indicating that he acknowledged that the drugs were imported from Mexico. And as the Court is well-aware, it's not his personal knowledge. All the Government has to do is prove that, based on the investigation, it indicated that the methamphetamine specifically was imported from Mexico. And as outlined by the response by the Probation Office, that is in fact what the evidence shows.

THE COURT: Okay. Thank you. And I'm going to overrule the objection. I do agree with the Government's position on that as well as the current Fifth Circuit case law

supports the Government's position on what the facts show. And I understand you're doing that for purposes of preserving it if I guess the law changes. So I'll overrule that objection.

Objection number two.

MR. SMITH: Your Honor, in the previous report it's paragraph 48. In the revised report it's paragraph 49 that dealt with the substance abuse issue. The probation officer did not recommend substance abuse counseling. We believe that there was a history of use of illegal drugs, specifically alcohol and marijuana. He has a conviction from 19 -- he has a conviction for possession of marijuana. I cannot remember the date.

Also, this report was drafted two years ago. Since that time there has been a significant change, and it is our position that drug and alcohol counseling would be extremely important as part of the rehabilitation process of Mr. Soria.

Thank you.

THE COURT: Mr. Smith, although it's rare that someone who's involved in drugs doesn't use it, but it has happened before. At every turn he has indicated he doesn't use illegal substances. So tell me, based upon that fact, why would the Court recommend drug abuse treatment when he has denied his use over and over again?

MR. SMITH: I think the Court hit on the exact point.

It's very unusual if someone is involved in being before this Court for the charges that they don't use.  I would agree.

Sometimes individuals have a hard time accepting responsibility and identifying the issues, which is the problem, and we believe that as a result of -- back in 2015 when Mr. Soria was interviewed, it was a problem.  Alcohol was a problem.  As the Court is well-aware, alcohol is a drug as well that causes people to, one, not think accurately, do stupid things, and his further use of marijuana.

I can only assume based on the limited information I've had over the last two years, since August 18th of 2015 when he was not here for sentencing, that there has been a continued use of alcohol, which is a drug, and we believe that drug and alcohol counseling would be appropriate.

Thank you.

THE COURT:  Mr. Gonzalez, anything the Government wants to add on this?

MR. GONZALEZ:  Your Honor, the only information is the information that we had back in 2015 that he used alcohol excessively.

THE COURT:  Okay.  Well, I'm going to overrule the objection.  There's not a basis for the Court to order some kind of drug counseling.

I will include a statement, because there is an

indication in the Presentence Report, for him to be evaluated for alcohol and will have the Bureau of Prisons review that. Whether he qualifies or not, I'll leave that to the Bureau of Prisons. But I'm not going to necessarily recommend that he do drug counseling for alcohol, but I'll ask them to at least review him for that, but I'm not going to order any kind of drug program.

I think that concludes your objections, correct?

MR. SMITH: Yes, Your Honor. Thank you, sir.

THE COURT: Sure. On behalf of the Government, Mr. Gonzalez, any comments, additions or corrections to the report?

MR. GONZALEZ: No, Your Honor, no comments, additions or corrections to the report, and we filed no objections.

THE COURT: And of course, Mr. Soria, you pleaded guilty to count two, conspiracy to possess with the intent to manufacture and distribute methamphetamine, pursuant to a plea agreement. To the extent I had not fully accepted the plea agreement, I will fully accept that plea agreement now.

So the Court finds that the information contained in your Presentence Report has sufficient indicia of reliability to support its probable accuracy. The Court adopts the factual findings, undisputed facts and the guideline applications in the Presentence Report.

Based upon a preponderance of the evidence presented and the facts in the report, while viewing the Sentencing

Guidelines as advisory, the Court concludes as follows:
Your total offense level is a 42.  Your criminal history
category is a III, which provides for an advisory guideline
range of 360 months of imprisonment to life.

And then let me first call upon Mr. Smith, if you would
like to comment.  I know you had the original sentencing
memorandum and the new one you filed I think either -- I saw
it this morning, and so I have reviewed that.  I'll call
upon you first to comment on what you believe the
appropriate sentence should be in this case.

MR. SMITH:  Yes, Your Honor.  Thank you very much.
Since the Court has had an opportunity to review both
the sentencing memorandum and the amended sentencing
memorandum, I will just narrow it down.

On August 18th of 2015 when Mr. Soria's name was called
in this very courtroom, he was not present.  On that day he
made the biggest mistake of his life.

Mr. Soria is -- came to the United States at a very
young age.  He is the only member of his family that was not
a U.S. citizen or obtained U.S. citizenship.

He got scared.  He didn't show up.  And once he crossed
that line, he could never turn back, and he now stands here
two years later, over two years later.

Had he been present here in court, his sentence -- the
recommended sentence was going to be 262 months.  It is my

belief at that time or at some time after, this Court would have considered a departure in this case, and that departure would have been anywhere from about 131 months at the low end up to 175 months, depending on the recommendations of Mr. Gonzalez, and obviously, at the end of the day, this Court would have decided.

For a period of 18 months, as outlined, Mr. Soria placed himself in a position for success and to have an opportunity for a shorter sentence. He placed himself in a position where his own safety could have been put in danger.

I can't make an excuse for my client's absconding, but I know this, a sentence of 360 months for a 41 year old man is a life sentence. He, in essence, will be about 68 and a half years old before he is released.

We respectfully ask this Court for a sentence of 262 months, the original sentence in this case, and we ask the Court to take into account his cooperation, his work that he did over a period of 18 months.

That sentence is a significant sentence. It is -- it will send a message to the community. It will also provide safety for the community, and it is significant but not greater than necessary. We believe that would be a just sentence in this case, when you take the totality from December of 2013 to August of 2015 and his work, as well as when you take into account for the last two years his

screw-up. And he did, he screwed up. But he is a human being that deserves an opportunity at one point in time in his life to be able to get out.

He will never be a father to his children locked up. He has two children. He may never be back in the United States. At some point in time he will be deported.

We respectfully ask this Court for that sentence of 262 months. Thank you.

THE COURT: Thank you. Mr. Gonzalez, what's the Government's position on sentencing?

MR. GONZALEZ: Your Honor, we believe that the guideline sentence as calculated by the probation office is appropriate for this Defendant for a multitude of reasons. Not only the fact that he was involved with a significant amount of drugs, but the fact that he was given the opportunity by the Government to cooperate, he was given the opportunity by the Court to be out on bond for that purpose, and he violated that trust that the Court put on him and that the Government put on him.

He was admonished on numerous occasions. Once he was released, he was admonished that violations of his release would have consequences. Every day that he met with the agents, in his cooperation with the agents, he was admonished that if he violated or he committed any offenses, there would be severe consequences. So this is not an

individual that was not admonished or was admonished once by the Court and he failed to comply. This is an individual that was admonished by the Court, was admonished by the agents to comply with all the requisites that the Court had placed on him but also the requirements that the officers, the agents had placed on him in signing him up as a cooperating Defendant.

The other reason I believe that the sentence is appropriate is he did have an option. He had an option to turn himself in. If we agreed that he got cold feet at that time on August 18th, he had approximately two years to reconsider that decision, and he chose not to. He chose to hide and he chose not to turn himself in, and worse yet, he went back to distributing drugs. I can call the case agent for that purpose, Your Honor.

THE COURT: Well, I don't need that.

MR. GONZALEZ: Well, what the case agent would testify, Your Honor, is that once he was released, during that two year period that he was a fugitive from this Court, he went back to distributing large quantities of drugs. In fact, the way that the agents were able to find him is because he was involved in a drug transaction involving ten kilos. And we chose not to go through with that transaction of those ten kilos with him, and instead, we decided just to arrest him to bring him before the Court as quickly as possible.

So he's made decisions, Your Honor, and he has made all the wrong decisions, and now he wants to come back to this Court and wants this Court to have some leniency with him.

He's not a young man. He's 41 years of age. He has some criminal history. He should have known better. He should have done the right thing, and he chose to do all the wrong things, and now he wants this Court to have some sympathy on him. I would argue to the Court that that's not something that he merits because of his own actions.

THE COURT: Thank you, Mr. Gonzalez. Mr. Soria, you have the right to address the Court on any issue, if you so desire.

MR. LUIS MANUEL SORIA: Well, Your Honor, I want to say I know I made a mistake. I mean, I got scared. At the time that I talked to Mr. John Smith, he told me that -- the last time that I spoke with him, that I was doing 262 days, right? Well, to me, I already cooperated and everything. To me, sounded like it still was like a lot, like I was getting a lot of time that I, you know, I didn't -- I thought that as soon as I cooperated, I was going to get like half of my time taken off. And I still -- I still went out there and did what I had to do for them, and at the end of the day, I thought like I was still getting my sentence of 262 months.

And like John Smith said, I mean, I never been to Mexico. Another thing that he had told me, I was going to

get deported. I mean, I've been here since I was a child. Like he said, my whole family has been -- I mean, they're citizens of the United States. I was just scared, Your Honor.

THE COURT: Thank you. Any reason why the Court should not pronounce sentence at this time?

MR. GONZALEZ: No, Your Honor.

MR. SMITH: No, Your Honor.

THE COURT: So, Mr. Soria, of course, the Court's job is not an easy one in determining what the appropriate sentence is. We start off first with the guideline range, and the guideline range in your case is 360 to life, which I think is the correct interpretation of the existing -- the way things are now, which is increased because you became a fugitive. Then the Court has to determine ultimately what the right sentence should be.

And, of course, your counsel has asked the Court to basically do a variance, and what's unfortunate in your situation is that you were looking at a lower range and the reality is that that sentence itself would have probably been cut because of your cooperation, but because you became a fugitive, that's no longer on the table. So ultimately, I'm not sure what your sentence would have ultimately been if you had shown up back in -- I guess in September of 2015.

Of course, your counsel says the biggest mistake you

made was running. I think that's the second mistake you made. The first mistake you made was getting involved in the drug business. Then you made an even bigger mistake when you decided to run and become a fugitive.

So what the Court has to do is look and see, and as the Government points out and says I shouldn't give sympathy. I never give sympathy. That's not -- sympathy doesn't play a part when the Court looks at whether a variance should be granted or not.

You're somebody who's not a young man, really. I mean, you're 41. That's not that young. You should know what's going on. You're a criminal history Category III, so you have some criminal history, so you're not coming to the Court with a Category I, which I could see someone that's a Category I, I would look at whether to grant a variance or not.

But then you have your role in this conspiracy. You had a significant role in the conspiracy and it involved a significant amount of drugs. And then you were given the opportunity to cooperate, which you did, and you were given a bond, and you violated that bond by absconding. I understand that you were afraid, but it went on for a period of time. You know, it's not like you got afraid that morning and didn't show up and a week later or a month later you decided, okay, I was just scared, I'm going to show up.

So none of these actions give the Court any pause to say that you should get a variance, and I'm not going to grant you a variance in this case. Your record establishes what the right sentence is, and I believe irrespective of the guidelines -- even if the guideline is wrong, I think 360 is the appropriate sentence for the activities you have taken on and then the multiple violations of the trust of the Court by absconding.

Do I take pleasure in sending people to jail? No. It's the worst thing I have to do, and I struggle with this all the time in my job, but it's part of my job to decide that and what the appropriate sentence should be.

In your case, even if the guidelines were wrong, 360 is sufficient, based on your involvement with drugs and all the activities, including your absconding.

So pursuant to the Sentencing Reform Act of 1984, having considered the factors noted in 18 USC Section 3553(a), and after consulting the advisory Sentencing Guidelines, it's the judgment of the Court that the Defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for 360 months on count two of the second superseding indictment.

The Court finds you don't have the ability to pay a fine. I will waive the fine in this case.

You are ordered to pay to the United States a special

assessment of $100, which is due and payable immediately.

I will also include a recommendation that they evaluate you for whether you qualify for alcohol abuse treatment. I'm not saying they should give you that. I'm just asking them to evaluate you on that.

You're ineligible for all federal benefits listed in 21 USC Section 862(d) for a period of five years from the date of this order.

Upon release from imprisonment, you shall be placed on supervised release for a term of five years. Within 72 hours of release from the custody of the Bureau of Prisons, you shall report in person to the probation office in the district to which you're released.

You shall not commit another federal, state or local crime and you shall comply with the standard conditions that have been adopted by the Court. In addition, you must comply with the mandatory and special conditions and instructions that have been set forth in your Presentence Report.

I will also recommend North Texas, as included in the memorandum you asked for that, so I'll include that as a recommendation to the Bureau of Prisons for placement purposes.

And I will, for the record, again say that I think this is the appropriate sentence, irrespective of the guidelines,

and that's what I would so find based upon your record involved with drugs, your criminal history, as well as your absconding from the Court on the bond you were placed on.

Now, sir, you have the right to appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there was some other fundamental defect in the proceedings that were not waived by your guilty plea.

You have a statutory right to appeal your sentence under certain circumstances, particularly if you believe your sentence is contrary to law.

However, you can waive those rights as part of your plea agreement, and you have entered into a plea agreement which waives certain rights to appeal your conviction and your sentence.

With the exception of the grounds reserved in your plea agreement, you have waived any right to appeal in this case. Such waivers are generally enforceable, but if you believe the waiver is not enforceable, you would need to present that theory to the Appellate Court.

With few exceptions, any notice of appeal must be filed within 14 days of the judgment being entered in this case. If you're unable to pay the costs of the appeal, you can apply for leave to appeal in forma pauperis and you can file an affidavit for that request, if you so desire. If you so request assistance, the clerk of the court will prepare and

file a notice of appeal on your behalf.

Now, your Presentence Report is already part of the record.  It is under seal, so it will remain under seal unless needed for purposes of appeal.

Then I know you pleaded guilty to count two.  Are there other charges to dismiss, Mr. Gonzalez?

MR. GONZALEZ:  Yes, Your Honor.  We would move to dismiss any underlying indictments as well as any counts that the Defendant did not plead guilty to.

THE COURT:  I'll grant that request.  Anything further from the Government?

MR. GONZALEZ:  No, Your Honor.  Thank you.

THE COURT:  Anything further from defense?

MR. SMITH:  No, Your Honor.  Thank you, sir.

THE COURT:  Mr. Soria, you'll go back into the custody of the marshals pending your placement by the Bureau of Prisons.  Thank you.

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/_____          _____
Jan Mason                        Date